IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KALULE COCHRAN, | ) | |
| | ) | Civil Action No. 18 – 1577 |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Magistrate Judge Lisa Pupo Lenihan |
| | ) | |
| WARDEN THOMAS MCGINLEY and DISTRICT ATTORNEY OF ALLEGHENY COUNTY, | ) ) ) | |
| | ) | |
| Respondents. | ) | |

# MEMORANDUM OPINION[1]

Pending before the Court is a Petition for Writ of Habeas Corpus ("Petition") and Brief in Support thereof filed by Petitioner Kalule Cochran ("Petitioner") pursuant to 28 U.S.C. § 2254. (ECF Nos. 3 & 4.)  Petitioner challenges his 2006 judgment of sentence out of Allegheny County, imposed after he was found guilty of third-degree murder and criminal conspiracy.  For the following reasons, the Petition will be dismissed and a certificate of appealability will be denied.

### A.   Procedural Summary

The Commonwealth of Pennsylvania charged Petitioner with one count of criminal homicide at CP-02-CR-0000785-2005.  (Resp't Exh. 1, ECF No. 13-1, pp.3-19.)  At CP-02-CR-0011372-2005, the Commonwealth charged Petitioner with two counts of aggravated assault,

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c)(1), the parties have voluntarily consented to have a United States Magistrate Judge conduct proceedings in this case, including the entry of a final judgment.  (ECF Nos. 8 & 15.)

1

one count of criminal conspiracy, one count of carrying a firearm without a license, and one count of recklessly endangering another person. (Resp't Exh. 2, ECF No. 13-1, pp.20-30.) To reflect the changes that occurred during a pretrial motions hearing held on November 17, 2005, the Commonwealth filed a petition for partial *nolle prose* that dismissed one count of aggravated assault and the firearms charge. (Resp't Exh. 6, ECF No. 13-1, p.122.)

Petitioner waived his right to a jury trial and proceeded to a bench trial before the Honorable John A. Zottola. (Resp't Exh. 11, ECF No. 13-1, pp.161-65.) At the conclusion of trial, the court convicted Petitioner of third-degree murder and criminal conspiracy and acquitted Petitioner of all remaining charges. On December 4, 2006, the trial court sentenced Petitioner to 20 to 40 years' imprisonment for third degree murder and gave no further penalty for conspiracy. (Resp't Exhs. 12-14, ECF No. 13-1, pp.166-68.) Petitioner filed post-sentence motions that were denied on March 2, 2007. (Resp't Exhs. 15-17, ECF No. 13-1, pp.169-77.)

Petitioner appealed his judgment of sentence. (Resp't Exh. 18, ECF No. 13-1, pp.178-80.) The Superior Court docketed the appeal at 648 WDA 2007. (Resp't Exh. 19, ECF No. 13-1, pp.181-84.) The trial court filed its opinion in the matters to be raised on appeal on June 22, 2007. (Resp't Exh. 20, ECF No. 13-1, pp.185-90.) The Superior Court affirmed Petitioner's judgment of sentence on March 25, 2008. (Resp't Exh. 23, ECF No. 13-1, pp.240-45.) Petitioner then filed for allowance of appeal to the Pennsylvania Supreme Court. (Resp't Exh. 24, ECF No. 13-1, pp.246-71.) The Pennsylvania Supreme Court docketed the petition at 211 WAL 2008. (Resp't Exh. 25, ECF No. 13-2, pp.3-5.) The petition was denied on October 16, 2008. (Resp't Exh. 27, ECF No. 13-2, p.7.) Petitioner did not file a petition for writ of certiorari to the United States Supreme Court.

On or about May 25, 2010, Petitioner filed a *pro se* petition that was construed as one for relief under Pennsylvania's Post-Conviction Relief Act ("PCRA"). (Resp't Exh. 28, ECF No. 13-2, pp.8-20.) The PCRA court appointed counsel to represent Petitioner who, on February 16, 2012, filed a motion to withdraw accompanied by a no-merit letter. (Resp't Exh. 29, ECF No. 13-2, pp.21-54.) The PCRA court issued a notice of its intent to dismiss the PCRA petition on February 21, 2012. (Resp't Exh. 30, ECF No. 13-3, p.55.) On March 26, 2012, the PCRA court dismissed the PCRA petition without a hearing. (Resp't Exh. 31, ECF No. 13-2, p.56.)

Petitioner appealed the denial of PCRA relief. (Resp't Exh. 32, ECF No. 13-2, pp.57-60.) The Superior Court docketed the appeal at 853 WDA 2012. (Resp't Exh. 33, ECF No. 13-2, pp.61-64.) The PCRA court filed its opinion in the matters to be raised on appeal on June 25, 2012. (Resp't Exh. 34, ECF No. 13-2, pp.65-66.) The Superior Court affirmed the denial of PCRA relief on July 3, 2013. (Resp't Exh. 37, ECF No. 13-2, pp.109-14.)

On or about January 3, 2012, Petitioner filed a *pro se* petition for writ of habeas corpus in the Pennsylvania Supreme Court that challenged the legality of his sentence. (Resp't Exh. 38, ECF No. 13-2, pp.115-30.) The petition was docketed at 10 WM 2012. (Resp't Exh. 39, ECF No. 13-2, pp.131-33.) The Pennsylvania Supreme Court summarily denied the petition on June 13, 2012. (Resp't Exh. 41, ECF No. 13-2, p.135.)

On or about August 30, 2014, Petitioner filed a second *pro se* PCRA petition wherein he raised an illegal sentence claim pursuant to Alleyne v. United States, 133 S. Ct. 2151 (2013). (Resp't Exh. 42, ECF No. 13-2, pp.136-54.) The PCRA court issued a notice of its intent to dismiss the petition on October 6, 2014. (Resp't Exh. 43, ECF No. 13-2, p.155.) On October 22, 2014, the PCRA court denied the petition, and Petitioner did not appeal. (Resp't Exh. 44, ECF No. 13-2, p.156.)

On or about September 13, 2016, Petitioner filed a third *pro se* PCRA petition. (Resp't Exh. 45, ECF No. 13-2, pp.157-78.) The PCRA court issued a notice of its intent to dismiss the petition the next day. (Resp't Exh. 46, ECF No. 13-2, p.179.) The PCRA court then dismissed the petition on October 12, 2016. (Resp't Exh. 47, ECF No. 13-2, p.180.) Petitioner appealed the denial of PCRA relief. (Resp't Exh. 48, ECF No. 13-2, pp.181-82.) The Superior Court docketed the appeal at 1753 WDA 2016. (Resp't Exh. 49, ECF No. 13-2, pp.183-86.) On July 20, 2017, the PCRA court issued its opinion in the matters to be raised on appeal. (Resp't Exh. 50, ECF No. 13-2, p.187.) The Superior Court affirmed the denial of PCRA relief on April 11, 2018. (Resp't Exh. 53, ECF No. 13-2, pp.251-54.)

Petitioner initiated the instant habeas proceedings on November 9, 2018.[2] (ECF No. 1.) His Petition and Brief in Support thereof were docketed on November 26, 2018. (ECF Nos. 3 & 4.) Respondents filed their Answer to the Petition on January 18, 2019. (ECF No. 13.)

### B. Factual Summary

The Pennsylvania Superior Court summarized the facts of the case in its opinion on direct appeal as follows:

> Mario Wright and George Morrison went together to the Sportsman's Bar at 909 Crawford Street in Duquesne, Pennsylvania, on the night of November 20, 2004. They entered the bar at about 12:30 a.m. and went separate ways. Jessica Walker testified that Morrison was accidentally pushed into Dana Heaps and fell between her legs. Heaps testified that she saw [Petitioner] and Morrison patting each other down. Wright testified that Morrison said, "Let's go," and "Let's roll." Walker then saw [Petitioner] leave the bar, followed immediately by Derrick and Dwayne Brown. Outside the bar, Wright found Morrison in a confrontation with [Petitioner] and an unidentified male. Wright attempted to intervene but was assaulted by the unidentified male and passed out momentarily. When Wright came to, Morrison looked at him in surprise and began to run; Wright followed him. Wright then heard two loud bangs followed by a series of bangs. As he ran, Wright looked over his right shoulder and saw [Petitioner] firing at Morrison

---

[2] This is the filing date pursuant to the prison mailbox rule. *See* Houston v. Lack, 487 U.S. 266 (1988).

4

while the unidentified male fumbled with something at his waist. Wright and Morrison then ran in separate directions. Morrison was found dead 331 feet from the Sportsman's Bar. Police found 9 mm and .40 caliber shell casings and bullets at the scene of the shooting; a .38 or .357 bullet was found in Morrison's body and determined to be the bullet that caused his fatal wound. Detective Opferman first interviewed Wright at 3:00 a.m. that night and at 9:00 a.m. showed him a photo array. He told Wright that a photo of a person involved in the crime might or might not be included. Wright pointed to the photo of [Petitioner] as one of the men who shot at him.

Police recovered two of the firearms used on the night of Morrison's killing. On November 8, 2004, officer Mark Rayman patted down Derrick Brown during a traffic stop and found him carrying a .40 caliber Glock 23. Ballistic tests demonstrated that this was one of the weapons used the night Morrison was killed. Ballistic testing of a 9 mm Taurus handgun found abandoned at a construction site on December 10, 2004, showed that this weapon was also fired at the scene of the crime. The weapon that fired the .38 or .357 bullet was not recovered.

On December 6, 2004, Detective Tallent met with [Petitioner] who was at the time incarcerated in Stark County, Ohio. [Petitioner], having waived his *Miranda* rights, told Tallent that he was present the night of the shooting but did not shoot Morrison. He said he confronted Morrison about what he perceived was Morrison's disrespect of his girlfriend, Heaps, but that the unidentified man fired the fatal shots. [Petitioner] said that he heard on the street after the shooting that 9 mm and .40 caliber handguns had been used in the crime. He said that he was friends with Derrick Brown but that the fact that Brown was at the Sportsman's Bar that night was merely a coincidence. [Petitioner] refused to blame anyone for the shooting but when he heard that Brown had been found in possession of a .40 caliber handgun he said, "You have the gun, you man your man."

[Petitioner] called Detective Tallent on December 14, 2004 and said he wanted to add some details to what he had told the Detective earlier, adding that Derrick and Dwayne Brown were both outside the bar at the time of the shooting and that Dwayne was armed with a 9 mm handgun.

Based on this testimony the trial court, in a non-jury proceeding, reached the following conclusions. On the night of the murder, [Petitioner] observed an interaction between his girlfriend and Morrison. The situation escalated and Morrison told Wright it was time to leave. Morrison and [Petitioner] left the bar, followed by Dwayne and Derrick Brown. Based on the forensic evidence of the location of the spent cartridge casings and Wright's testimony, Wright was assaulted by Dwayne Brown and rendered unconscious momentarily. Upon regaining consciousness, Wright fled the scene with Morrison. Dwayne Brown fired the 9 mm handgun from near the entrance to the bar, striking Morrison in the

foot.  Derrick Brown fired the .40 caliber gun from the street.  The fatal bullet was fired from a third gun, a .38 or .357 caliber, that was fired by [Petitioner].  [Petitioner] was convicted of third degree murder and criminal conspiracy.  The trial court denied [Petitioner]'s post-trial claim that the verdict was against the weight of the evidence.

(Resp't Exh. 23, ECF No. 13-1, pp.240-43.)

**C. Discussion**

Petitioner presents two claims in his Petition.  In the first claim, he argues that the Commonwealth failed to disclose a plea deal with witness Jessica Walker ("Walker") and that his trial counsel was ineffective for failing to uncover it.  In Petitioner's second claim, he argues that the trial court improperly sentenced him for the firearms charge which it had dismissed pretrial.[3]

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") imposes a one-year limitations period for state prisoners seeking federal habeas review.  It is codified at 28 U.S.C. § 2244(d) and it provides:

(1)  A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation period shall run from the latest of –

  (A)  the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

  (B)  the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

  (C)  the date on which the constitutional right asserted was initially recognized by the Supreme Court, if that right has been newly

---

[3] The Court notes that there is also a possible third claim raised by Petitioner in his Petition, although it is unclear.  Petitioner states that his trial counsel failed to conduct any pretrial investigation.  *See* ECF No. 3, p.9.  To the extent Petitioner intends this to be a claim, it is also subject to dismissal for the same reasons that are set forth herein relating to the other two claims.

>> recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.
>
> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this section.

28 U.S.C. § 2244(d).

The statute of limitations set out in § 2244(d)(1) must be applied on a claim-by-claim basis. Fielder v. Varner, 379 F.3d 113 (3d Cir. 2004), *cert denied*, 543 U.S. 1067 (2005). In analyzing whether a petition for writ of habeas corpus has been timely filed under the one-year limitations period, a federal court must undertake a three-part inquiry. First, the court must determine the "trigger date" for the one-year limitations period pursuant to section 2244(d)(1). Second, the court must determine whether any "properly filed" applications for post-conviction or collateral relief were pending during the limitations period that would toll the statute pursuant to section 2244(d)(2). Third, the court must determine whether any of the other statutory exceptions or equitable tolling should be applied on the facts presented.

It appears that the "trigger date" for both of Petitioner's claims is the date on which his judgment of sentence became final, which in this case was January 14, 2009, the last day Petitioner had to file a petition for writ of certiorari in the United States Supreme Court 90 days after the Pennsylvania Supreme Court denied allocator on October 16, 2008. *See* Swartz v. Meyers, 204 F.3d 417, 419 (3d Cir. 2000) (noting that a judgment becomes "final" at the conclusion of direct review or the expiration of time for seeking such review). Thus, absent any tolling for "properly filed" applications for post-conviction relief, Petitioner had one year from

January 14, 2009, or until January 15, 2010, to file a timely federal habeas petition challenging his judgment of sentence.  As previously noted, Petitioner did not file his Petition in this case until November 9, 2018, over eight years later.  Accordingly, the Court must next determine whether Petitioner can take advantage of the tolling provision in section 2244(d)(2).

Section 2244(d)(2) provides that the one-year limitations period is tolled during the pendency of a "properly filed" state post-conviction proceeding.  Petitioner filed his first PCRA petition on May 25, 2010.  By the time he filed that petition, however, Petitioner's one-year limitations period to file a timely federal habeas petition in this Court had already expired.  As such, Petitioner is not entitled to any statutory tolling of the statute of limitations pursuant to section 2244(d)(2).[4]

Having failed to meet AEDPA's one-year statute of limitations, the Petition can only be saved by the application of equitable tolling or the Supreme Court's recognized fundamental miscarriage of justice exception.  See Holland v. Florida, 560 U.S. 631 (2010); see also McQuggin v. Perkins, 569 U.S. 383 (2013).  Petitioner does not argue the applicability of equitable tolling to his case, but he does argue that he is actually innocent perhaps in an attempt to invoke the fundamental miscarriage of justice exception.  In this regard, a petitioner invoking the miscarriage of justice exception in order to overcome AEDPA's statute of limitations must demonstrate that he is actually innocent by showing that "it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence" presented to the district court.  McQuiggin, 569 U.S. at 399 (quoting Schlup v. Delo, 513 U.S. 298, 327 (1995)).

---

[4] It is noted that Petitioner filed several more post-conviction petitions after his first PCRA petition was denied. However, none of those petitions tolled Petitioner's statute of limitations under the AEDPA because it had already expired before Petitioner filed any of those petitions.

8

In Schlup, the Supreme Court established the analytical framework for addressing whether a habeas petitioner has made a sufficient showing of actual innocence. The required showing is usually discussed as having two steps: first, the petitioner must present "new reliable evidence" of actual innocence, id. at 324; and then, second, that evidence must "persuade[] the district court that . . . no juror, acting reasonably, would have voted to find [the petitioner] guilty beyond a reasonable doubt." McQuiggin, 569 U.S. at 386 (quoting Schlup, 513 U.S. at 329.) The Schlup standard is "demanding and permits review only in the extraordinary case". House v. Bell, 547 U.S. 518, 538 (2006) (internal quotation omitted). Additionally, in this context, "actual innocence" means "factual innocence, not mere legal insufficiency." Bousley v. United States, 523 U.S. 614, 623 (1998); *see also* Reeves v. Fayette SCI, 897 F.3d 154, 160 (3d Cir. 2018).

Petitioner alleges that he has evidence that one of the Commonwealth's witnesses, Jessica Walker, was given a favorable plea deal in exchange for knowingly-perjured testimony at trial. *See* ECF No. 4, p.9 (". . . Commonwealth's Attorney brokered a[] plea agreement to unrelated crimes in exchange[] for known false inculpatory statements against Petitioner.") Petitioner has attached to his Brief in Support of his Petition one docket sheet and one court summary sheet for someone named Jessica Walker with a date of birth of October 31, 1981. *See* ECF No. 4, pp.17-18. The docket sheet is for a 2003 non-traffic citation and shows that on May 8, 2003, a person named Jessica Walker either pled to, or was found guilty of, summary disorderly conduct. Id., p.17. It is unknown whether this Jessica Walker is the same Jessica Walker who was a witness in Petitioner's case,[5] but, even assuming that it is, the disposition of her offense for disorderly conduct occurred before Petitioner's crime that lead to his conviction, which occurred in

---

[5] A quick search of criminal cases for "Jessica Walker" in Allegheny County only revealed at least three different individuals as determined by different dates of birth.

9

November 2004. Accordingly, it could not have provided the basis for any exchange of false testimony in Petitioner's case. Next, the court summary sheet Petitioner attaches shows three cases again involving a person named Jessica Walker. Id., p.18. The first case number on that sheet is for a 2007 case and shows that on October 8, 2008, a person named Jessica Walker received a three-month probation sentence after pleading guilty to disorderly conduct. Once again, even assuming this is the same Jessica Walker who testified at Petitioner's trial, this 2007 case did not exist during the time Petitioner's case was pending for trial from 2004 to 2006. As such, it also could not have provided a basis for exchange of any testimony. The second and third cases on the court summary sheet are for two 2006 summary offense cases, but the summary sheet contains no disposition information for either case. These dockets appear to be all of the evidence that Petitioner has submitted to support his claim that there was a plea deal for perjured testimony. However, as already noted, the 2003 docket sheet reflects a guilty plea that *preceded* Petitioner's crime and the court summary sheet reflects crimes that either occurred *after* Petitioner's trial or do not have any disposition information whatsoever. Furthermore, the docket sheet and court summary sheet contain no information about the pleas themselves, specifically whether the Jessica Walker in those cases pled pursuant to plea deals or instead pled to the charges generally. If there were plea deals, no terms are listed on the dockets and there is no evidence on the dockets of any illicit agreement for knowingly perjured testimony.

Petitioner also attached to his Brief in Support of his Petition police reports that detail their interviews with Walker after the crime. See ECF No. 4, pp.19-21. The Court assumes that Petitioner attached these reports to specify what he believes to be Jessica Walker's false statements. Specifically, Petitioner bracketed and/or underlined Walker's statement to police that, a few weeks after the murder, she was hanging out with Dewayne Brown, one of

Petitioner's co-shooters. Walker told police that she asked Brown what happened and that Brown told her that Petitioner was one of the shooters that evening and that Petitioner shot the victim because he believed the victim was hitting on his girlfriend. Id. Walker, however, did not testify at trial as to the exchange she had with Brown weeks after the murder. *See*, *generally*, TT 199-207. Instead, Walker's testimony was limited to what she heard and saw the night of the murder. Id. The trial court, sitting as finder of fact, had no knowledge of Walker's statements to the police, including her conversation with Brown. As such, even if the Commonwealth had brokered a plea deal for perjured testimony, and then forgot to elicit that perjured testimony at trial, there would be no prejudice since the finder of fact never heard it.

Finally, the Court notes that Walker's testimony at trial did not prejudice Petitioner. Walker did not directly witness the shooting and therefore her testimony was not needed to prove that Petitioner killed the victim. Instead, the Commonwealth had another eyewitness that testified that he personally saw Petitioner at the altercation outside the bar and that Petitioner shot at the victim while the victim was running away. TT 70-75. What Walker's testimony did establish was that Petitioner had the specific intent to kill the victim by testifying that she heard Petitioner say, as he was exiting the bar, "I'm going to kill this mother fucker." TT 205. However, despite this testimony, the trial court found as fact that Petitioner did not have a specific intent to kill the victim and convicted Petitioner of third-degree murder. TT 259-60.

For all of the above reasons, Petitioner has not made a sufficient showing of actual innocence by establishing that no reasonable juror would have voted to find him guilty in light of the evidence that he has presented to the Court. Therefore, Petitioner cannot overcome the

untimeliness of his Petition pursuant to the miscarriage of justice exception, and, as such, the Petition will be dismissed since it was untimely filed.[6]

### D. Certificate of Appealability

A court should issue a certificate of appealability where a petitioner makes a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a [certificate of appealability] should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Slack v. McDaniel, 529 U.S. 473, 484 (2000). Petitioner has not made the requisite showing in this case. Accordingly, a certificate of appealability will be denied. A separate Order will issue.

Dated: February 22, 2021.

_____
Lisa Pupo Lenihan
United States Magistrate Judge

Cc:  Kalule Cochran
     GW-6819
     SCI Coal Township
     1 Kelley Drive
     Coal Township, PA  17866

     Counsel of Record
     (*via CM/ECF electronic mail*)

---

[6] The Court notes that even if the Petition was timely filed, which it was not, the claims in it are also subject to dismissal because they are procedurally defaulted for substantially the reasons argued by the Respondents in their Answer. Furthermore, the claims lack merit for substantially the reasons argued by the Respondents, as well.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KALULE COCHRAN, ) | |
| ) | Civil Action No. 18 – 1577 |
| Petitioner, ) | |
| ) | |
| v. ) | Magistrate Judge Lisa Pupo Lenihan |
| ) | |
| WARDEN THOMAS MCGINLEY ) | |
| and DISTRICT ATTORNEY OF ) | |
| ALLEGHENY COUNTY, ) | |
| ) | |
| Respondents. ) | |

## ORDER

**AND NOW**, this 22nd day of February, 2021;

**IT IS HEREBY ORDERED** that the Petition for Writ of Habeas Corpus (ECF No. 3) is **DISMISSED**.

**IT IS FURTHER ORDERED** that a Certificate of Appealability is denied.

**IT IS FURTHER ORDERED** that the Clerk of Court enter judgment in favor of Respondents and mark this case **CLOSED**.

**AND IT IS FURTHER ORDERED** that pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure, Petitioner has thirty (30) days to file a notice of appeal as provided by Rule 3 of the Federal Rules of Appellate Procedure.

Lisa Pupo Lenihan
United States Magistrate Judge